So Stardust versus the City of Brookhaven. Good morning. May it please the Court. We are here about an ordinance that the City of Brookhaven has adopted. It is a content-based ordinance. It is a speaker-based ordinance. It says that no one can sell sexual devices in the city or, excuse me, no one can advertise sexual devices in the city if they're giving special prominence to them. I think, I guess my problem with this case is that it seems to me that if we analyze it, as you argue, that this is a First Amendment case, and we apply the, it seems to me we apply the Renton test, and that this ordinance easily satisfies it. Well, Judge, we would disagree. I think Central Hudson is the applicable test. The city has admitted Is that a distinction without a difference? Well, I think it is. Why do you care? Why do you insist on Central Hudson? Well, I think that post Sorrell versus IMS Health has really informed the public that Central Hudson has some teeth. And I'm not so sure Renton has the teeth that Central Hudson has. Renton would apply, would assume that the law's purpose was unrelated to suppressing a message. Central Hudson, of course, when you're regulating speech, you are absolutely regulating the message, the advertising. In this case, the city The ordinance would allow the operation of this kind of business in portions of the jurisdiction and a licensure for it. It's not a ban, and it says that it's to regulate the secondary effects. They compiled a big legislative record to support that. It's not a heavy burden under the case law to do that. What am I missing? Well, Judge, this particular first of all, those the legislative record. We're talking about two CD-ROMs with, as you as you point out, hundreds of anecdotal studies. And which is what the federal courts have told them they have to do. Well, in those deal with entertainment, adult entertainment. They deal with bookstores, video arcades, strip clubs. What the city of Brookhaven has done, it has created a brand new breed of what it calls the sexual entertainment business, a sexual device shop. The products that this store is selling, first of all, it's a tobacco store in the main. If there's any one greatest portion of the inventory. We got photographs in the record of what the shelves in this store look like. I buy a cigar once a year on the week before the third Saturday in October to celebrate Alabama's annual victory over Tennessee. And I can assure you that when I go to buy my cigar, I've never seen shelves like I've seen in the record in this case. Right. Well, and maybe I buy my cigar somewhere else too. But the fact is, is this is this is a high end, couples friendly, approachable. This is a new breed of business. It's the think of Adam and Eve. These are billions. It's a billion dollar industry. This is not your grandfather's adult shack. It is. They have lingerie. They have tobacco and all the different accessories. It is the type of product, the adult, excuse me, the the sexual devices. They are sold in Walgreens. They are sold in Kroger. You know, Sex and the City was in what, 1998? And then we got Fifty Shades of Grey earlier this year. I mean, there are end caps promoting Fifty Shades of Grey in Target. Well, but the question here is whether or not on the First Amendment issue, whether or not the ordinance of Brookhaven is impinging any of your First Amendment rights. And you sort of speak of advertising. You keep talking about advertising, but I don't see anything in the ordinance that speaks to advertising. You can advert the billboard side of the case is out of here. It's not in front of us. So as for your store, if you want to put a big sign up, talks about the sex objects and the joy and pleasure, it brings people peace and tranquility in the kingdom to use these things. That's fine. Nobody stops you with that. The manner in which you place your products, where you put them in the store, whether you put them at the front or the back, whether you put them all in one place. The test is whether or not they regularly give special prominence to sexual devices, right? That's correct. So if you want to put your devices next to some literature, you could do that. You might then have a First Amendment argument. According to the Supreme Court saying it's a doubtful argument, but it's there. But it seemed to me that this is a sort of a volumetric. They chose to define your store by what you do, right? And so it's the special prominence that you say leads into advertising, right? Right, and the record reflects that, Judge. They looked at the content of the commercial sign, the 20-foot pole sign outside the store, in determining that the store is, in fact, giving special prominence to these devices. Well, the ordinance speaks to whether it features. Features, but features is fine as you would expect. Right, and I agree with you that features, one meaning of that would be to give special prominence to. You know, I look at the photographs in the record of the shelves. I would be surprised by an argument that this store doesn't feature the commercial sale of sexual devices. The store has, at least until recently, had placed the sexual devices in a back room. The store is broken into different rooms. One could argue and believe that that's not featuring. They're tucked away in the back of the store. And yes, the shelves are stocked. You know, I'm confused by this argument. So are you now saying that your client does not feature and therefore is not engaged in First Amendment activity or is? Well, Judge, we think the law is vague. Yeah, the problem with the vagueness argument is there's no facial challenge to vagueness. And when I look at this record and what your client does, I don't see the vagueness. Well, we believe there is a facial. Maybe somebody else, it would be for someone else, it would be uncertain. But the Supreme Court of the United States has said that that's an actual plaintiff-specific inquiry. And looking at this record, I don't see how it's vague or uncertain as to you. Well, Judge, two responses. One is we are challenging it on facially, but it is vague. And the Supreme Court has said there's no facial challenge based on vagueness. Okay. Well, we are saying it's also vague as applied to us. It seems to be, the city seems to say, and the court sounds like it might be agreeing, that just the number of devices translates into whether they are giving special prominence to the devices. That, if the city were going to do that, they could write a law that says that. You know, if you stock more than 500 devices, your sexual device shot. Now, that would invariably lead to other. They have an interpretive regulation outstanding now, don't they, that has a number associated with it? Judge, they did. After the deposition we took of Mr. Song, where he said, for a business, the size and the scale of SARDAS or a similar size, I would say about maybe 100 or so devices might be a threshold. And then, yes, they submitted an affidavit on summary judgment that, quote-unquote, narrowly construed their ordinance. It's our position under state law, under Georgia state law, they are not permitted to essentially recast the city's ordinance. That's not an interpretation. That's recasting the ordinance. The ordinance is very clear. It says if you give special prominence to devices, plural. One city code enforcement officer counted approximately 1,688 sexual devices on offer at SARDAS. We were contemplating whether to bicker with that number, but we wouldn't dispute. We wouldn't dispute that there were at least 1,000. Some of these are very small. That's misleading a little bit, but be that as it may. I'm not surprised by that. Be that as it may. I'm having trouble with your take on the case that the First Amendment is implicated at all by this zoning regulation. And my concern is that if we agree with you that the mere definition of your company by virtue of special prominence, it's a definitional thing that raises the problem, that if we agree with you, the First Amendment, commercial speech is going to be involved in any store that behaves almost in any fashion. I don't see a limiting theory or principle that somehow constrains or ties down a limit to where it would go if we were to rule in your favor. Well, Judge, the city has chosen to define the entity here by the manner in which it is promoting or advertising a single line of product. Not advertising. They don't say a word about advertising. Respectfully, they do, Judge Clubbinger. First, they ticketed the business repeatedly. They moved to hold it in contempt in state court, and as evidence, they are pointing to the content of the signs on the windows, on the mobile signs, on the 20-foot pole signs. Is that in the record in front of the judge? It is, Judge. I didn't see that. The sign is, they cite to the sign in their own brief before this court as evidence that the business is giving special prominence to the sexual devices. Okay. No, no. Okay. Mr. Wiggins, you've saved four minutes for rebuttal. Okay. Thank you, Judge. Mr. Berkholdt. Good morning, Your Honor. May it please the Court. This case is about a recalcitrant sex shop operator, Mr. Morrison, who set out to do something that was prohibited by Brookhaven law and continue to do so. And he basically says three things. One, I won't operate in any of the 73 locations in the city of Brookhaven where I could do whatever advertising, whatever signage, and as many thousands of sexual devices as I want. Then he says, number two, I won't reduce my inventory to below 100 sexual devices, even though if I did so, I could keep all of my signage and not be in violation of the ordinances construed by the state court. So will he apply for a license? He didn't even apply. He applied for a tobacco license, and he can continue to do that. No, but he didn't apply for the license that would allow him to operate a sexual device store. Absolutely. Never did. And there is a business that has long done that, that applied for and obtained a license. Correct. That's correct. So if they were in a proper, one of these 73 proper locations that's not too close to residences and so forth, they could do all the things that he's talking about. So it's clearly not a content-based or a speaker-based regulation. All the cases like Sorrell that he talks about are if you market to pharmaceutical companies and certain data from data miners, that applied across the board. Lorillard tobacco, every merchant of tobacco has to comply with these specific display practices. In fact, the only reason that the district court assumed that there might be a First Amendment interest at play was because under Lorillard there were specific regulations about display practices for cigarettes, and those aren't in existence here. She, of course, ruled on us. I mean, she ruled in our favor following Renton and said the result would be exactly the same under central Hudson, but I think. And even if ruling, right? Even if it is First Amendment activity, it falls squarely, but then Renton should be upheld. Absolutely, Your Honor. And I think on that principal question, which I do want to focus on for just a moment, about whether the First Amendment is implicated by the sexual devices, Judge, the case in Sewell v. Georgia that we cited from the Supreme Court rejected the idea that the sale of sexual devices implicated the First Amendment. Judge Ross found that in her thorough 80-page district court opinion, but Judge Clevenger today points out the real reason why there is no limiting principle on that idea. If the idea is that you feature a product by giving special prominence to it, no matter what the product is, you thereby trigger First Amendment scrutiny, then every single business would argue that every zoning regulation. Of course, one way to avoid that problem is to write your ordinance differently. Well, Your Honor, we could say. You don't have to use features, right? Potentially, Your Honor, but think about it this way. Let's say we define a liquor store as an establishment that regularly offers alcoholic beverages or a barbershop as an establishment that regularly offers the service of giving haircuts. Well, you're still engaging in that speech of the offering for the transaction. Another way to do it would be stocks or sales. Stocks or sales, that's true. But in that case, we're still in the same boat where every business is going to do something of speech incidental to the selling of their products. It's almost impossible to do so. Yeah, but the ordinance wouldn't refer to it. That's true, but that's why we have cases like Rumsfeld and other cases that say only when speech is inherently expressive. I'm just defending why the district court would just go the extra mile and say, I'm going to assume it, right? I won't believe it. Part of that was invited by the way your client wrote its ordinance is my only point. It could have been written differently. It wouldn't have raised that question. Potentially, but you're right. If they had said a tobacco store is a place that regularly offers tobaccos or cigars, then we could be here under the same argument because the offer is some type of expression to communicate the offer. What are you going to do? Let's assume just a hypothetical. Let's assume Stardust changes its business. In fact, the record shows it is changing its business around somewhat. And it decides to go out of the clothing business and the cigar business and that sort of thing. And it goes in the medical device business, has crutches and wheelchairs and all the kinds of things that I believe would be within medical products. And it is primarily dedicated to providing medical. It says big sign on it. But they also continue their sex toys. Your Honor, they can do so. If that were the case, wouldn't they then have an as applied vagueness challenge to make to you? They could possibly make that argument, Your Honor. But how would you, would you, what would you do to them? Would you make them go get a license under this ordinance if they were primarily dedicated to providing health care products, but at the same time they were also giving special promise to sexual devices? Well, Your Honor, that that is basically the type of hypothetical that exists. It's not hypothetical, but I'm pushing a little bit on the vagueness issue. Thank you, God. Your Honor, the second sentence of the definition is really just a recognition of reality. In other words, drugstores, pharmacies and other establishments primarily dedicated to health care products and services don't regularly feature any sexual devices. What happens if they want to? What happens if CVS suddenly discovers that the best way to make a lot of money is to sell sex toys? If they did that, then they would likely fall within the exception. I mean, that's why CVS is not regulated because. I mean, you could have a drugstore that would be, would be, you know, giving special promise to sexual devices and you wouldn't bring a lawsuit against that. If they fit within the exception of the second sentence, then no, you're right. We would not bring a lawsuit against that entity. That is just an animal that doesn't exist, though. And that's partly why the second sentence is really just a recognition of reality that pharmacies do not give special prominence to it. On the flip side, stores like this, based on the pictures that Judge Pryor was referencing earlier in the argument, don't dedicate themselves to medical products. In fact, I think the district court's finding on those two points is extremely important because there was no evidence that there was any ban on advertising or display anywhere in the ordinance. That was at page 38 of the district court's order. She also found, Judge Ross did at pages 104, record entry 104, pages 25 to 26 of the order, that there's no evidence in the record that sexual devices, quote, are featured in any way at any pharmacy, end quote, in the city of Brookhaven. Are you challenging them as the requisite sex device shop because of their advertising out in front? Well, because they're giving special prominence. They're basically holding themselves out as an establishment that caters to these sex products. See why the district court analyzed it underwritten now? Well, Your Honor, the district court properly concluded that signage is one way to give special promise to something. But also, as you mentioned, you can have a huge wall from floor to ceiling that doesn't have any special signage, but it just has a thousand dildos. It very much would fall within the realm of what they're doing. Just the vast quantity and numbers show that they are giving special prominence to something. And it's sort of like Justice Scalia's concurrence in FWPBS versus City of Dallas, where he said it would be bizarre if it was such an animal where a business regularly featured something, but then they did not carry that product or make that a central focus of their business. So this language, by the way, exists in dozens and dozens of adult entertainment cases. For example, those defining adult cabarets as an establishment that regularly features new dancing. You have that regularity requirement because you don't want to have the occasional Salome's Dance of the Seven Veils or some hair production trigger the regulation. But what happens is the First Amendment scrutiny comes into play not because of the definition. There's no case law on the regularly features part triggering the First Amendment. It's because the underlying new dancing or expressive conduct that's inherently expressive when it conveys a certain message is what triggers the First Amendment scrutiny underwritten. So there are a lot of cases, Your Honor, that… That makes those cases easier. So they don't need to get into the argument about whether it features or not because the underlying conduct is expressive. That's right. But that doesn't mean necessarily that they wouldn't still have a question if the underlying conduct wasn't expressive, but the ordinance is regulating the featuring of the products in the district courts looking at the signage. It's possible, but it's more attenuated to any First Amendment interest. It's more like a run-of-the-mill zoning of a type of business, and the business is defined by the products they offer or feature. And so there… I think the district court was correct to argue in the alternative, but I would also point the court to the citations in our case, not only the FWPBS but also the Heidemann case and others where they say adult novelty stores are, you know, are not engaged in First Amendment protected activity. Even though they're selling objects, as in Sewell, the case that the Supreme Court decided by dismissing for one of a substantial federal question the claim that the selling of sexual devices like these triggers First Amendment scrutiny. So we think that was the proper holding. She did do the alternative analysis based on the Lorillard case that she cited about actually regulating display practices, but you're correct. We would win under either Renton or Central Hudson, and she elucidated that at pages 40 to 45 of her opinion. Let me ask you this. How does the display of sexual devices as opposed to the sale of sexual devices relate to the goal of preventing secondary effects? Well, and that's… Your Honor, the goal of preventing secondary effects is geared towards the business as a whole. Mr. Wiggins has, you know, artfully tried to make this about the city doesn't want these on sexual devices to be displayed or featured. That's not the case. It's not an individual regulation of sexual devices, or they would have prohibited the sale of sexual devices under the circuit's authority, a la the Sandy Springs case that we hear about a couple months ago. They didn't do that. The secondary effects is from the operation of this kind of establishment. So, for example, and I wanted to point this out in the record, we cited at page 23 of our brief in note six a number of places. He says that none of these studies deal with these types of stories. That's not true. On the… First of all, as an initial matter, nothing in the secondary effects case law requires the government to have research that targets the exact activity that they wish to regulate. But we do have that anyway. At page 23, footnote six, we cited a series of cases that uphold adult retail-only stores. They don't have nude dancing. They don't have peep show booze or on-premises video operations that still find negative secondary effects. One of those is the worldwide video of Washington v. City of Spokane case from the Ninth Circuit. The entire legislative record on retail stores that all sell some adult media and sex toys was included in the City of Brookhaven's voluminous 2,500-page legislative record. Some examples on Answer Exhibit 4, which is the CD-ROM that contained the legislative record. This is at the docket entry 5-4. The 16th PDF file on that was a study out of Fort Worth, Texas, done by a national top-notch land-use planning firm called Duncan & Associates, where certified real estate appraisers overwhelmingly concluded that adult novelty stores and adult media stores adversely impact residential and commercial properties in the proximity of where they're located. Do any of those sources pertain to the regularly features aspect that you have here? Well, Your Honor, the studies don't get into the featuring, but they assume that a store that carries 1,000 sex toys actually advertises and features them and holds themselves out as that type of establishment. And the cases find secondary effects from these retail stores that have sexual devices in their inventory as one of their main product displays. For example, that's ubiquitous in the industry. At record entry 63-4, Mr. Morrison's deposition transcript from April 3, 2015, at page 56, lines 14 through 24, he says, I've opened up 35 adult stores and 75% of them sell these sexual devices. In other words, it's not as though when you reference an adult bookstore in the case law or in the studies that it's separate from an establishment that sells and displays the sexual devices. We also cited a case that in record entry on that same CD, file 43, which is all the cases that the city relied upon, one called Illinois XREL Daters versus Lines Den, which was documenting the adverse impacts on the community from a retail sex shop that sold many things, including sexual devices. The Bates numbering on this, just for the record, is at 2776, 2779, and 2780 on that. And then there was a Jackson County expert report, which was document or PDF number 15 on that CD-ROM, at Bates 714 and 715, talking about the higher crime rate that was associated with this chain of stores, this Lines Den store, which is a retail store. Last, I do want to talk just briefly on the issue of vagueness. Judge Pryor was correct when he mentioned that there is no facial claim in this context. You would have to prove that it's unconstitutional in all of its applications. But under the law of the circuit, it's very clear that when a party engages in conduct that's clearly prescribed by a statute, even some conduct that's clearly prescribed by the statute, that he cannot complain of vagueness from the statute. And that's exactly what we have in this circumstance. Finally, Your Honor, I would point the court to that same file 43, a case called Gamo versus City of La Habra, California. It's a Ninth Circuit case. It was part of the legislative record for the city's ordinance. It's at 395 F. 3rd, 1114. And it's kind of interesting. They basically claim, well, we want to be adult cabaret dancers, and we can't be within two feet of patrons in this club. So it's vague what adult cabaret dancer does. And that's like this case. The Ninth Circuit there said, look, it's not illegal to be an adult cabaret dancer. In Brookhaven, it's not unlawful to be a sexual device shop, to regularly feature, to do all these things, carry thousands of devices. It's illegal to do so within 300 feet of a residential district or without the license. And the court said there's no rule of constitutional law that says tell me how I can have thousands of sexual devices. Thank you, Mr. Bercow. I think we understand your case. Thank you, Your Honor. Mr. Wiggins, you have four minutes. Thank you. Stardust did indeed ask the city for whatever licenses the city deemed were proper for its location. Yeah, when it obtained a license as a tobacco shop, right? Right, an occupational tax certificate or business license. It never sought this kind of license. It never applied for the license to operate a sexual device shop. That appears to me to be indisputable from this record. That's correct. They did not file a paper application for an SOB license. They were trying to be what's called a percentage store. And I hear this repeatedly, this kind of establishment. You cannot come in and give a shutdown and ticket an establishment just because you think it is manipulating the adult entertainment. You're not manipulating. The store doesn't need to sell. If the store is operating the kind of business that is regulated by the zoning ordinance and for which a license is required, for which it hasn't applied, you can certainly come in and shut it down. The only issue, there is nothing wrong with that operation. This is a high-end store. It has good operators. They did everything right. The only issue, and it boils down to this, Judge Breyer, are they giving special prominence to the devices? Not how many, not what color they are. Are they giving special prominence to the devices? If they were not giving special prominence to the devices, they do not need an SOB license. They can operate. And you talk about Renton. Renton assumes that the justification is unrelated to the message. I thought you're – but you have a claim in this case that this is a First Amendment violation, right? We do, Judge. And you do because your business engaged – specially features sexual devices. And now you seem to be arguing that you don't. We do feature – we do not feature. That's a vague term. We do sell. I've asked you your business. We're trying not to feature them. It is part of the inventory. It is part of the concept. Here's what's lost on me. I understand – why is it that a store that primarily sells health care products can sell 10,000 sexual devices? What is – why is it assumed – We have a record that says that there is such a business. We have a – the record, the study – Is there in this record evidence that within this city, within this municipality, there's a drugstore that sells 10,000 sexual devices? No, there is not, Judge, but I'm talking about the validity of the regulation, the studies behind the regulation. If you look at the studies, the Fort Worth – the 2004 Fort Worth study, it's a couple of questions to some appraisers. It's a glorified Yelp review. And it doesn't, as Judge Breyer pointed out or asked about, it does not include a standalone sexual device shop. Every single study, anecdotal evidence, people testifying at planning meetings, they're always talking about movie theaters or bookstores or strip clubs, not this idea of a store that's selling female breast pumps or Hitachi Magic Wands or the pictures that you saw in the record. There are – selling the devices is – does not make one an adult bookstore. And defining my client by the mode of advertising and then lumping in all the secondary effects evidence does not justify the ordinance. I think that's all we have. Thank you, Judge. Thank you, Mr. Reagan.